**Fried, Frank, Harris, Shriver & Jacobson LLP**

# FRIED FRANK

One New York Plaza
New York, New York 10004
Tel:  +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com

Direct Line:  212.859.8592
Fax:  212.859.4000
steven.witzel@friedfrank.com

November 27, 2018

**FILED UNDER SEAL**
**REDACTED VERSION VIA ECF**
**UNREDACTED VERSION VIA EMAIL AND HAND DELIVERY**

Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007

     **Re:**    ***United States v. Valle*, 18-cr-00063**

Dear Judge Rakoff:

     We are CJA counsel representing defendant Omar Valle, who is scheduled to be sentenced by the Court on December 4, 2018.  The reasons set forth below demonstrate that a below-Guidelines sentence of 36 months would be sufficient, but not greater than necessary, under the circumstances of this case.

     On August 23, 2017, Omar Valle was arrested for the first and only time in his life and placed in federal custody.  On August 16, 2018, he pleaded guilty before Your Honor to one count of conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin, and five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  *See* Ex. A, August 16, 2018 Plea Allocution Transcript.[1]



---

[1]     Citations to "Ex __." refer to the exhibits to the attached Declaration of Glenn L. Radecki, dated November 27, 2018, and submitted with this letter.

**New York • Washington • London • Frankfurt**
Fried, Frank, Harris, Shriver & Jacobson LLP is a Delaware Limited Liability Partnership

Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Jed S. Rakoff                                             November 27, 2018
                                                                        Page 2

███████████████████████████████████████████████████

## **BACKGROUND**

Omar Valle was born in rural Los Mochis, Sinaloa, Mexico in 1976.  Omar experienced trying circumstances growing up, as his parents struggled financially to support Omar and his three younger siblings.  As a child, Omar would, at times, need to borrow clothes and shoes from neighbors and friends so that he could attend school.  Although Omar's parents never divorced, Omar's father, an alcoholic, physically and verbally abused Omar's mother.

Raised in this challenging environment, Omar developed close relationships with his younger brothers and sister that remain strong.  Shortly after their mother's death from breast cancer in 1994, Omar immigrated to the United States, seeking opportunity and hoping to help his siblings financially.  He settled in Mesa, Arizona, with cousins, and enrolled in high school to learn English.  While in high school he met Michelle Lynn McGarvey.  After three years of dating, Omar and Michelle married,[2] and had a daughter, ███, in 2002.

Omar worked in construction until around 2004, when he was laid off.  Although Omar found new employment at a restaurant within the year, the financial stress caused by the layoff wore on his marriage.  He and Michelle separated in 2005 and divorced shortly thereafter.  Omar remained involved in ██████'s life, paying child support and spending time with her regularly.  Omar and Michelle remain friendly, and speak frequently about their daughter.  Omar has also maintained a relationship with Michelle's family in Arizona, including his former in-laws.

In 2006, as his divorce was being finalized, Omar became addicted to methamphetamine and used it regularly for a period of approximately six months.  At the time, Omar lived in Arizona with his sister, Maria, who he had been supporting following her immigration to the United States.  Maria shared her concern about Omar's drug use with their two younger brothers, Javier and Juan Carlos.  The three then confronted Omar, and at their urging he met with a medical doctor in Mexico who had expertise in drug rehabilitation and helped Omar to stop using.  To address the underlying cause of Omar's addiction, the doctor prescribed anti-anxiety medication, which Omar took for a year.  Omar has not used methamphetamine or any other illegal drug since this intervention.

In 2008, when visiting Javier and Juan Carlos in Mexico, Omar met Elizabeth Gutierrez, with whom he is currently in a long-term committed relationship.  Omar and Elizabeth have a common-law marriage and two children together, ██████, age 7, and ██████, age 4.  Since meeting Elizabeth, Omar has continued to work in the United States while regularly traveling to visit her and their children.  Omar has another daughter, ██████,

---

[2]        Omar became a lawful permanent resident through his marriage.  He became a naturalized citizen in 2013.

New York • Washington • London • Frankfurt
Fried, Frank, Harris, Shriver & Jacobson LLP is a Delaware Limited Liability Partnership

Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Jed S. Rakoff                                      November 27, 2018
                                                        Page 3

age 2, in Arizona.  While Omar does not have an ongoing relationship with ████'s mother,
prior to his arrest he paid voluntary child support and visited with ████ regularly.

From 2008 through 2016, Omar worked steadily in construction in Arizona.  He used
his income (roughly $500 per week) to contribute to Elizabeth's household expenses and to
support his four children.  He also paid the rent for the home he shared with Maria, and sent a
portion of his salary to Javier and Juan Carlos to assist with their expenses.  It was
understandably difficult to support four children and contribute to three households on his
income of approximately $26,000; the Federal Poverty Guidelines for a family of six is
$33,740, and does not take into account the financial help that Omar extended to his siblings.



Since his arrest, Omar has maintained his close relationships with his family and
children.  His sister Maria and his brother Javier have flown in to visit him from Arizona and
Mexico, respectively.  Omar also speaks regularly with his family members, particularly his
children, his siblings Maria and Javier, and his wife Elizabeth.  Omar's family has been a
source of strong emotional support, and Omar says that his conversations with them help him
remain hopeful about his future.

## ANALYSIS OF SECTION 3553(a) FACTORS

While the advisory Guidelines are a "starting point" for a sentencing court, *Gall v. United
States*, 552 U.S. 38, 49 (2007), the Guidelines alone are not presumed reasonable.  *United States
v. Davis*, 598 F.3d 10, 12 (2d Cir. 2010).  A sentencing court must "make an independent
sentencing determination, taking into account the 'nature and circumstances of the offense and
the history and characteristics of the defendant,'" and the factors identified in 18 U.S.C.
§ 3553(a).  *United States v. Singh*, 877 F.3d 107, 116 (2d Cir. 2017).  A sentencing court may
consider "any and all information that reasonably might bear on the proper sentence for the
particular defendant," including the factors listed in Section 5H of the Guidelines, which
specify age, educational skills pertinent to rehabilitation, and lack of appropriate guidance as
a youth. *See United States v. Juwa*, 508 F.3d 694, 700 (2d Cir. 2007) (quoting *Wasman v. United
States*, 468 U.S. 559, 563 (1984)).

Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Jed S. Rakoff                                                November 27, 2018
                                                                          Page 4

     Omar is remorseful and accepts full responsibility for transporting drugs.  In determining an appropriate sentence, it is important to consider the circumstances of his upbringing, his sincere remorse, and his lack of prior criminal history.  *See, e.g.*, U.S.S.G. §§ 5H1.2, 5H1.8.  The Court may also consider Omar's significant family ties and his demonstrated commitment to his family.  *See United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006) ("[T]he judge is not prohibited from including in [the sentencing] consideration the judge's own sense of what is a fair and just sentence under all the circumstances."); *see also United States v. Bloomfield*, 394 F. App'x 760, 763 (2d Cir. 2010) (affirming a below-Guidelines sentence in which a defendant's "past and his future, his family's support, his educational level, and his abilities" were considered).

## I.    <u>Section 3553(a)(1): Mr. Valle's History and Characteristics</u>

### A.    **Mr. Valle's Personal History**

     It is clear that Omar has faced significant personal challenges throughout his life.  While Omar had close family relationships growing up, he witnessed his father abuse his mother, and he and his siblings sometimes lacked basic necessities such as appropriate shoes and clothing to wear to school.  These circumstances do not excuse his conduct – people successfully improve their and their family's financial circumstances without turning to crime.  But Omar's childhood poverty does help provide context for his actions, because he was driven by an intense desire to provide greater financial security for his own children and for his siblings.

     Omar intends to use his time in prison to further his education and job training, so that he can earn a better salary to support his children and siblings.  He recognizes that no promise of financial gain is worth risking prison again, and he is determined to set a better example for his children in the future.  He is devastated by the loss of time with his loved ones that his sentence will create, particularly his children.

     It is equally clear that, after he serves his time for this offense, Omar will be aided in achieving his goals by his extensive support network.  Nine family members and friends have written letters of support to the Court in advance of Omar's sentencing.  These letters illustrate Omar's kind heart, family focus, and work ethic.  For example:

- I have always known Omar to be a very hard worker in any job he's held.  He's very likeable and easily makes friends with his coworkers.  He has a good heart, and cares deeply for his family and friends, but especially for his children. . . .  [Omar] would want to do what's right and not want to put his future in jeopardy and wouldn't want to be away from his children like this again.  Ex. C, Letter from Omar's ex-wife Michelle McGarvey (Oct. 30, 2018).

- This is the first time we have heard of Omar committing a crime and believe once his sentence is served that it will not happen again.  We always thought of him as articulate and a hard worker.  His family is very important to him and for that reason

New York • Washington • London • Frankfurt
Fried, Frank, Harris, Shriver & Jacobson LLP is a Delaware Limited Liability Partnership

Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Jed S. Rakoff                                                          November 27, 2018
                                                                                        Page 5

we don't believe he will be a repeat offender.  Ex. D, Letter from former in-laws
Patrick and Bonnie McGarvey (Oct. 31, 2018).

- [T]he first impression I got from [Omar] was that of a serious, respectful, kind, and
  responsible person . . . [T]his mistake wasn't intended to harm anyone, nor to achieve
  a superior financial status, nor to make purchases nor acquire luxuries, this mistake,
  [was] committed out of desperation and the impotence of not being able to get his
  family ahead . . . he is totally regretful . . . this time that he has been behind bars and
  away from his home, from me, and above all from his children, [ ] is the greatest pain
  he has right now, not to be with them.  Ex. E, Letter from current (common-law) wife
  Elizabeth Gutierrez (Oct. 31, 2018).

- Omar is a great person[,] a good son[,] father[,] and brother[.]  [H]e is loving, fun,
  and very hard-working . . . he has always been a hard-working and honest man . . . he
  has reached the conclusion that it was very wrong to have committed this crime and I
  know that this will never happen again because he is super-remorseful for wasting
  time there where he is unable to be with his family.  Omar knows that he has 100% of
  my support to return to his life as a good citizen and he knows that my house is here
  so that he has where to live once he is released and likewise I will help him look for a
  job and reenter society.  Ex. F, Letter from Omar's sister Maria Valle.

- [Omar] is a good person, attentive, kind with his peer[s], he gives without receiving
  anything in return . . . as a head of a family and son he is responsible and attentive, is
  always mindful that his family doesn't lack anything. . . Omar is a very loyal person,
  . . . with a strong character.  This is the very first time that I learn[ed] that he has
  done anything against the law. . . . he is honest and loyal, I believe he wouldn't
  commit the crime he already committed again.  Ex. G, Letter from Omar's brother
  Juan Carlos Valle.

- From a young age [Omar] has shown much maturity, responsibility, and emotional
  stability . . . he is a hard-working man, educated, socially active, he likes to spend
  much time in the company of his loved one . . . Omar has a family that loves him,
  respects him and will support him in every way. . . .  Ex. H, Letter from Omar's
  brother Javier Valle.

- Omar Valle is a very hard-working person and a very responsible person with his
  family . . . I would give my life for him and [ ] my grandchildren miss him very
  much[.]  Ex. I, Letter from Omar's father-in-law Eleo Monzon de Gutierrez (Nov. 4,
  2018).

- My father is a good person who made a terrible mistake and who cares greatly about
  his family.  I'm missing out on spending time with my dad because of his crime.
  He's not around to teach me how to drive and he'll probably miss my high school
  graduation because of this, which makes me really sad.  I have never seen my dad

Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Jed S. Rakoff                                        November 27, 2018
                                                                        Page 6

> commit a crime and I don't think he ever would again after he is released.  Ex. J,
> Letter from ███████████████████████ (Nov. 14, 2018).

- My father is very good . . . I miss him a lot[,] I need him very much . . . he loved us
  very much he would hug us every day . . . he made a mistake but he will not do it ever
  again . . . we love him very much.  Ex. K, Letter from ████████████████████
  ████████████.

     The many heartfelt letters submitted on Omar's behalf illustrate that he has a broad base
of support that will ensure his successful re-entry once he serves his sentence.  They also show
that his criminal activity was out of character (as also evidenced by his lack of any prior arrests),
and that he is hard-working and dependable.  They demonstrate that when Omar is released he
will have a strong network to encourage and guide his efforts to again become a productive and
law-abiding member of society.

**B.    Mr. Valle's Educational and Employment History Support a 36-Month
        Sentence**

     Omar attended a technical high school in Mexico, and was trained in Heating,
Ventilation, and Air Conditioning.  Upon arriving in the United States, Omar enrolled in high
school in Mesa, Arizona to improve his English.  He now speaks excellent conversational
English, and in the United States he found work in entry-level positions as a contract laborer in
construction and in restaurants.

     Omar has maintained consistent employment throughout his adult life.  He sought to use
the skills he had learned in technical high school by obtaining employment in the construction
industry.  Despite severe difficulties in the job market due to the economic recession of the late
2000s, Omar has successfully maintained employment since 2004.  He worked for a concrete
company, and, when the concrete company was sold to a new owner and Omar was laid off,
Omar immediately found new employment with a roofing and remodeling company.  Omar's
skills in construction, acquired through his years of experience, will allow him to again obtain
gainful employment after his release from custody.



Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Jed S. Rakoff                                              November 27, 2018
                                                                        Page 7



## II.      <u>Section 3553(a)(1): The Nature and Circumstances of the Offense</u>

Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Jed S. Rakoff                                                     November 27, 2018
                                                                                    Page 8



### III.  Section 3553(a)(2): The Purposes of the Sentence Imposed

The Court's analysis under 18 U.S.C. § 3553(a) must be guided by the mandate to "impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes [of punishment] set forth" in 18 U.S.C. § 3553(a)(2).  18 U.S.C. § 3553(a) (emphasis added).  These purposes include the need for the sentence imposed:

> (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**Fried, Frank, Harris, Shriver & Jacobson LLP**

Hon. Jed S. Rakoff

November 27, 2018
Page 9

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  In determining a sentence that is sufficient, but not greater than necessary, for Omar, the Court should take into account the mitigating factors described above, as well as those set forth below.

## A.     Section 3553(a)(2)(A): Just Punishment

Omar understands that the transportation of narcotics is a serious offense, and he profoundly regrets what he has done.  He accepts that he will be incarcerated for several years because of his conduct.

As Omar's first and only criminal activity, this one-time aberration stands in sharp relief to Omar's otherwise responsible and upstanding life.  Omar has demonstrated that he can obtain and maintain lawful employment and that he can support those who depend on him.  While a felony conviction will present a challenge, Omar has experience and skills in construction to assist him in once again finding and maintaining employment.  Omar is still a young man at age 42, and depending on the length of his sentence, will likely be able to return to working in construction.

A sentence of 36 months would be just because it would provide Omar with the opportunity to learn from his grave mistake, yet would not foreclose the possibility of Omar returning to his former status as a productive member of society.



As this Court has long recognized, the Guidelines can be disproportionately harsh in narcotics cases.  *See* Jed S. Rakoff, *Why the Federal Sentencing Guidelines Should be Scrapped*, 29 Fed. Sent'g Rep. 226, 227 (2017) ("[I]t should be obvious that in a great many, perhaps most, cases, the weight of the drug. . .does not fairly convey the reality of the crime or the criminal."); *see also* Jed S. Rakoff, *Why Prosecutors Rule the Criminal Justice System—And What Can Be Done About It*, 111 Nw. U. L. Rev. 1429, 1433 (2017) (suggesting a "repeal of mandatory minimum and career offender laws…and a considerable reduction in the sentences 'recommended' by sentencing guidelines.")

Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Jed S. Rakoff                                                                November 27, 2018
                                                                                      Page 10

     The legislative and executive branches of the Government have also recognized the need for sentencing reform, and the bipartisan "First Step Act" to reform sentencing laws is currently before both chambers of Congress. *See, e.g.,* Nicholas Fandos & Maggie Haberman, *Bipartisan Sentencing Overhaul Moves Forward, but Rests on Trump*, N.Y. Times, Nov. 13, 2018, at A17; Nicholas Fandos & Maggie Haberman, *Trump Embraces a Path to Revise U.S. Sentencing and Prison Laws*, N.Y. Times, Nov. 15. 2018, at A1.



**B.**    **Section 3553(a)(2)(B) & (C): Deterrence**

     A 36-month sentence would effectively deter Omar from further criminal conduct. Omar has never before been incarcerated. His arrest and his fifteen months in custody already serve as a constant reminder to Omar of the wrongfulness of his actions. At this point, Omar has been fully deterred from committing any further crimes. A sentence of imprisonment, regardless of its length, will meet the goal of deterrence.

     Omar's age (42) and lack of any criminal history further support that a lengthy sentence is not necessary to deter him from further crime, as these factors already are associated with reduced recidivism. Older offenders without criminal history are significantly less likely to reoffend than those who are incarcerated at a young age, have a prior criminal history, or both. The decline in recidivism correlates with an increase in age, "regardless of the length of the sentence imposed." U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders*, Dec. 7, 2017, 3, 22 (Dec. 7, 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

     Omar is particularly cognizant of the effect of his actions on his family, most of whom he has not seen since his arrest and prosecution in New York. He is keenly aware that he has and will continue to miss milestones in his children's lives, such as ████'s sixteenth birthday and holidays with ████ and ████. *See* Ex. J, Letter from ████, and Ex. K, Letter from ████. Omar also knows that his continued absence has caused considerable financial hardship for the many family members who relied on his support. With these consequences already internalized, Omar is fully committed to living a law-abiding and productive life in the future. He is determined to never put himself or his family in this position again.

New York • Washington • London • Frankfurt
Fried, Frank, Harris, Shriver & Jacobson LLP is a Delaware Limited Liability Partnership

Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Jed S. Rakoff                                                November 27, 2018
                                                                        Page 11

     A 36-month sentence additionally meets the goal of deterring others from making a similar mistake.  A sentence of this length for a first-time offender appropriately signals that transporting narcotics is unacceptable and carries severe consequences.

### C.     Section 3553(a)(3): The Kind of Sentences Available

Fried, Frank, Harris, Shriver & Jacobson LLP

Hon. Jed S. Rakoff                                      November 27, 2018
                                                                Page 12

## **CORRECTIONAL FACILITY LOCATION REQUEST**

Omar has resided almost exclusively in the Phoenix, Arizona metropolitan area since immigrating to the United States.  His sister, cousins, and two of his children live in the Phoenix area.  If Omar serves his sentence in a facility near his family, he will be able to maintain his connections with his support network, which will aid him in reintegrating into his community. As detailed in their letters, his family members are uniformly eager to support him.  We respectfully request that the Court recommend that Omar serve his sentence at FCI Phoenix, or in the alternative, at another Bureau of Prisons facility in the State of Arizona.

## **CONCLUSION**

We submit that a sentence of 36 months' imprisonment, more than double the length of time that Omar has been incarcerated since his arrest (15 months), is appropriate.  This sentence would reflect the degree of Omar's involvement, deter future criminal activity, and adequately take into account Omar's history and characteristics.

For all of the reasons set forth above, we respectfully request that Your Honor sentence Omar Valle to 36 months' imprisonment, which would be a sufficient, but not greater than necessary, sentence under the circumstances of this case.


Respectfully,


s/ STEVEN M. WITZEL

Steven M. Witzel
Jennifer L. Colyer
Anne S. Aufhauser
Glenn L. Radecki


cc:     Michael Krouse, AUSA (by email)